## CHICAGO, ROCK ISLAND & PACIFIC R. R. Co.

### v.

### LAWRENCE HARMON.

1. EVIDENCE.—DECEASED WITNESS.—A witness who was present at a former trial and heard the testimony of a witness since deceased, and could give the substance of such deceased witness' testimony on such former trial but not the exact language. *Held* a competent witness to state what the testimony of such deceased witness was on the former trial.

2. SAME.—STENOGRAPHER'S NOTES.—The notes of a stenographer taken contemporaneously with the testimony in a previous trial, if he can testify positively as to their accuracy, may be put in evidence to prove the testimony of a deceased witness.

3. COMMON CARRIER.—DAMAGES.—It is the well settled law of this country that a common carrier can not by contract stipulate for complete immunity against his gross negligence; as to the right to stipulate for a partial exemption from his full liability, *quære;* authorities cited *pro* and *con.*

4. SAME.—AGREED BASIS OF DAMAGES.—But whether or not a common carrier has such right, there is nothing unreasonable or against public policy in an agreement entered into between the shipper and the carrier at the time of shipment fixing the value of the animal at the time and place of shipment as the basis upon which the damages are to be computed.

APPEAL from the Circuit Court of Peoria county ; the Hon. D. McCULLOCH, Judge, presiding. Opinion filed December 4, 1885.

Mr. THOS. F. WITHROW and Mr. JAMES C. HUTCHINS for appellant.

Mr. LAWRENCE HARMON and Mr. GEORGE B. FOSTER for appellee.

WELCH, J. This case was before this court at the May term, 1882, and is reported in 12th Bradwell, 54. It was again before this court at its December term, 1884, and was affirmed and is now before us again for consideration, a rehearing having been granted. We refer to 12 Bradwell, *supra,* for a statement of the case.

On the trial Mr. Wells, who was one of the attorneys, was called as a witness on the part of the appellant to testify as to the testimony given on a former trial of the cause by Mr. Ellwood then deceased, and testified as follows:

I am attorney for the company, and was such attorney in the trial of this case before. I remember Ellwood, who testified on the part of the defendant in that case.

Q. Do you remember generally the substance of his testimony as given at that trial?

A. I think I remember the substance of all his testimony.

There was an immense amount of cross-examination, and of course I do not remember the details, but I think I remember fully the substance of his testimony.

Q.   Do you remember the fact of the attorney for the defendant in this case asking Ellwood this question: "Do you know Nick Algiers?" and of his answering, "I know him when I see him."

. . (Objected to by plaintiff; objection sustained, and defendant then and there excepted.)

·  Q.   Do you, or do you not remember of the attorney for the defendant asking him this question, "Do you know———?"

By the Court:   To cut this matter short I will simply say that you have not yet laid the proper foundation for the testimony of this witness on his recollection of the substance of the witness' testimony.   I can not allow you to go on and repeat the questions and answers in the presence of the jury, and thus get before the jury indirectly what you could not get before them directly.   You have not laid the proper foundation.

(To which ruling of the court defendant then and there excepted.)

Q.   Did you ever see the letter now shown you?

A.   Yes, sir.

Q.   In connection with whose testimony?

A.   In connection with the testimony of Ellwood and others.

The Court:   Is your recollection sufficiently distinct and comprehensive so that you can go on and detail the evidence of that witness without having the questions put to you?

A.   I could detail the substance of his direct examination, and the substance of the material parts of his cross-examination.   It was a very long and rapid cross-examination, and there is a great deal in that, that I do not remember anything about.

Mr. Foster:   Then I submit that it is manifestly improper.

The Court:   It is not necessary to argue it.   I think the rule is so strict in a case of this kind that the witness not only must be able to state the substance of the material parts, but

also that which would go to impair his credibility, if any question of that kind were asked ; and it is necessary that the witness should be able to state that he remembers all the testimony substantially; not merely the testimony upon material parts, but substantially all his testimony, because the credibility of the witness is a very important matter to go before the jury. I think I will have to exclude the whole of it.

(To which ruling of the court the defendant then and there excepted.)

Defendant offers in evidence in connection with the testimony of Ellwood, the letter marked Exhibit B, in regard to which the witness Algiers was interrogated.   The letter is as follows :

"N. Algiers:   I took from the C., R. I. & P. Railroad one bay mare and colt.   I led the mare to the river and gave her all the water she wanted.   I started with her to L. Harmon's residence.   I was at the house one hour before I noticed the mare was sick.   I done all I could for her till Harmon come. When he come he throwed ice water all over her.   I started for Doctor Price.   When we got there Harmon was throwing water on her still.   Harmon told me that she was the cheapest one he bought.   I think he paid $100 for her.   The mare was sweating a little when she came from the cars the next day.   Harmon ordered me to take the mare and colt to his farm.   I done so.   When I got there with her Harmon ordered me to go to town and get some ice and throw ice water on her.   I done so until the mare died.   Harmon told me he would get twice the value of her.

N. ALGIERS."

(Objected to by plaintiff as improper ; objection sustained and defendant then and there excepted.)

Mr. Cratty :   We expect to show by Mr. Frank Bradley that he was present when that letter was written at the dictation of Algiers, and was read over to him by Mr. Ellwood.

It is apparent that the specific objection was that his recollection was not sufficiently comprehensive to allow him to testify as to what was stated by Ellwood.   The objection was that the witness was not competent, and the court having held

upon the specific objection that he was not competent, no offer to show what such witness would testify to was necessary.   In Rush v. Rock Island, 97 U. S. 639, at the second trial, the depositions of Connelly and Harson were offered to prove the contents of the depositions of Powers and Moore, which had been used on the former trial, these witnesses having died and their depositions having been burned.   Connelly was the counsel for the defendant.   He said he gave the main and principal points of the depositions of the deceased witnesses, and also the main and principal points of the cross-examination and re-examination of said Powers, as given when Powers' deposition was taken.   Harson stated that he remembered the substance of the testimony of each of these witnesses, but was not able to give the exact language of either.   The court in that case held there was no error in admitting this testimony.   The precise language of the deceased witness was not necessary to be proven.   To hold otherwise would, in most instances, exclude this class of secondary evidence, and in so far defeat the ends of justice.   In Iglehart v. Jernegan, 16 Ill. 513, it was held that the substance of what a deceased witness had sworn to is proper, and that the precise words need not be proven.

Algiers had testified that he did not cause the letter signed N. Algiers to be written, and that he did not ask Ellwood to write a letter for him, and that he did not say in the presence of Ellwood and Bradley that when he took the mare from the car, he led her to the water and gave her all the water she wanted, and that he was at the house of Mr. Harmon one hour before he noticed the mare was sick, and that soon afterward he started to get Dr. Price, and when he returned, Mr. Harmon was throwing water on her still, and that Harmon told him she was the cheapest one he bought.   He denied that he said that he thought Harmon paid $100 for the mare, and that when he took her to the farm, Mr. Harmon ordered him to get ice and throw ice water on her, and that he did so until the mare died.   He says that the letter was not written at his dictation, nor read to him afterward.   That the colt was wet with sweat, but not sick.   In view of the testimony of Algiers as to what he did and as to the condition of the

mare when she was taken by him from the cars, and his specific denial of all connection with this latter, and of making any statements to Ellwood in regard to it, we hold, under the foregoing authorities, that Wells was a competent witness to state what Ellwood had testified to on the former trial. And the objection having been based upon that ground, we hold the court erred in sustaining the objection. And we are further of the opinion that the evidence was material.

Mr. Watson, the stenographer at the former trial, was called by appellant, and testified as follows:

"Am a stenographer. I reported the case of Lawrence Harmon v. The Chicago, Rock Island and Pacific Railway Company, tried at the December term; A. D. 1881, of the Peoria County Circuit Court. I took down the evidence given at that trial in shorthand, and afterward wrote it out in longhand. The manuscript now shown me and called here the bill of exceptions in the former trial, is the longhand transcript as taken by me. It was written by myself, and is in my handwriting. The testimony of Mr. Ellwood, commencing on page 249, was written out by me from my shorthand notes that were taken at said trial, and it is a full and correct statement of his testimony, to the best of my knowledge and belief. It is the substance of all that he testified.

Defendant offers in evidence bill of exceptions prepared and filed in the case of Lawrence Harmon v. The Chicago, Rock Island and Pacific Railway Company, January 26, 1883, embodying the evidence of various and sundry persons, taken at the former trial of this case, and offers to read in evidence therefrom the testimony of Mr. Ellwood, commencing on page 249 of said bill.

(Objected to by plaintiff, because the proper foundation has not been laid for its introduction. Objection sustained.)

In the case of Rush v. Rock Island, *supra*, the court say: The living witness may use his notes taken cotemporaneously with the testimony to be proved in order to refresh his recollection, and thus aided he may testify to what he remembers, or if he can testify positively to their accuracy, they may be put in evidence. In Mineral Point R. R. Co. v. Keep, 22 Ill. 9,

it was said: What better evidence of the testimony of a de_ceased witness could there be than correct notes of it at the time. It fulfills one of the most important requirements of the law that the best evidence shall be produced in the power of the party to produce. * * * It seems to us that such minutes sworn to be correct are far better and more satisfactory evidence than the imperfect and fleeting recollection of any man could possibly be, and we do not feel the force of a reason which shall require us to disregard a higher for an inferior grade of testimony. In Brown v. Luehrs, 79 Ill. 575, it was said: "It is urged that the stenographer's transcript of the evidence, taken at the common law trial, was improperly admitted as evidence. The shorthand writer who reported the trial, testified that he wrote up the testimony; dictated it to two copyists; that the transcript of the testimony of the witnesses was correct; that they were sworn and testified as therein stated. We think the transcript was properly admitted."

Under the statement made by Watson, the stenographer, and in the light of the foregoing authorities, we hold that the transcript of Ellwood's evidence should have been admitted and that the court erred in excluding it.

It is insisted by counsel for appellants, 1st. That under the contract of shipment, appellee's right of recovery for damages was limited to the sum of $100 for each animal injured or lost; and, 2d, it is further insisted that if this view is not sustained, the measure of appellee's damages for the injury or loss of the animals should be computed at the value or cost of the same at the time and place of shipment.

The rules of appellant provide that "The line will not assume liability over one hundred dollars on horses and valuable live-stock except by special agreement." And that "agents are not allowed to receive and ship such valuable horses or other animals, until a proper contract or release is signed by the owner or shipper thereof." The memorandum of the agreement with the shipper in this case was:

"Chicago, Rock Island and Pacific Railway."

"No. of cars.

"224. Station, July 5, 1881.

Chicago, Rock Island & Pacific R. R. Co. v. Harmon.

"Memorandum of an agreement, made and concluded this day by and between the Chicago, Rock Island and Pacific Railway Company, of the first part, by their station agent, at the above named station, and W. J. Neely, of the second part, witnesseth :   That whereas the said Chicago, Rock Island and Pacific Railway Company transports cattle, hogs, sheep, horses, lambs, calves or other live-stock, only as per tariff in use at this date for stock per car load, or when taken less than a car load as per special rates, published on the tariff prices, and in accordance with the foregoing rules and regulations,

"It is further agreed, that in case of any damage or loss to any of said stock, while in course of shipment, the same, so far as it shall fall upon said company, shall be computed at the value or cost of the same at the place of shipment under this bill of lading.

"And this agreement further witnesseth, that the said party of the second part has this day delivered to said railway company one (1) car load of 1 mare and colt, to be transported to Peoria station on the conditions above expressed.

"D. M. HALL, Station Agent.

"(Duplicate.)                    "W. J. NEELY."

At common law a common carrier was held as insuring the safe arrival at its destination of the commodity intrusted to it for transportation against all acts except what were denominated acts of God and the public enemy, but this strict accountability did not include the condition of the article at the time of its arrival as compared with its condition when received. And in case of animals it is not an insurer against injuries or death caused by their nature which could not be guarded against by foresight and vigilance.

Judge Higby, in Illinois Central R. R. Co. v. Jonte, 13 Bradwell, 425, says :   The right of a railroad company to exempt itself from liability for loss or damage to goods delivered to it for carriage, except when the same is caused by the negligence of its own servants, is settled by a number of well considered cases in this State.   Indeed the doctrine is carried beyond this in the case of Arnold v. Illinois Central R. R. Co., 83 Ill. 275.   Justice Scholfield in delivering the opinion of the

court says:    The doctrine is settled in this court, that railroad
companies may contract or exempt themselves from liability
on account of the negligence of their servants other than    that
of gross or willful, and to sustain the same   cites the following
cases:    I. C. R. R. Co. v. Read, 37 Ill. 484 ; Same v. Morrison,
19 Ill. 133 ;  W. T. Co. v.  Newhall, 24 Ill. 466 ;  Adams Ex-
press Co. v. Haynes, 42 Ill. 89.   The same is held in St. Louis
and I. M. Ry. Co. v.  Larned, 10 3 Ill.  294.   The distinction
is here drawn between gross ne gligence and  slight.   As to
gross  negligence, protection by  contract is  not allowed —
as to slight negligence, immunity may be given by agree-
ment.   If a common ca rrier can not by contract stipulate  for
complete immunity against gross negli gence, can it by con-
tract stipulate for a partial exemption from his full  liability in
cases of gross negligence ?

There is  little if any conflict of authorities that a  common
carrier can not by contract stipulate for  immunity against  his
gross negligence.   It may be considered as the  settled  law of
this country.   As to the right to stipulate for a partial exemp-
tion from his full  liability, the authorities are not uniform.
The right is sustained in the following cases:

Hart v. Railroad Co., 5 Fed. Rep. 151 ; Harvey v. Railroad
Co., 74 Mo. 538 ; Squire v. N. Y. Central R. R.  Co., 98 Mass.
239;  137  Mass.  72 ; Newburgh v. Howard, 6  Phila.  174 ;
Hopkins v.  Westcott, 6 Blatchford, 64 ; Belger v. Dinsmore,
51 N. Y. 166 ; Magnin v. Same, 56 N. Y. 168 ; 62 N. Y. 33 ; 70 N.
Y. 410 ; South and North Ala. R. R. Co. v.  Henlon, 52 Ala.
606 ; Same v. Same, 56 Ala. 368 ; Muser v. Holland, 17 Blatch.
538.    The opposite rule is sustained in Southern  Express Co.
v. Moon, 39 Miss. 822 ; Chicago, St. Louis  and  N. O. R.  R.
Co. v. Abels, 60 Miss. 1017 ;  U. S. Express Co. v.  Blackman,
28 Ohio State, 144; Black v. Goodrich Transportation Co., 55
Wis. 319 ; Kansas City R. R.  Co. v. Simpson, 30  Kan.  645 ;
Moulton v. St. Paul Ry. Co., 81 Minn. 85 ; Galt v. Adams Ex-
press Co., 48 Am. Rep. 742.

In our view of this case there was  no error in the refusal of
the instruction limiting appellant's liability to $100.   For
under  neither view of  the law, as above stated  could that in-

Chicago. Rock Island & Pacific R. R. Co. v. Harmon.

struction have been sustained. . It was in violation of the rule of the railroad company itself, that the line will not assume liability over $100 on horses and valuable live stock " *except by special agreement*," for in this case the special agreement provided, " It is further agreed that in case of any damage or loss to any of said stock, while in course of shipment, the same, so far as it shall fall upon said company, shall be computed at the value or cost of the same at the place of shipment under this bill of lading."

When the limitation of liability was based on a rule, we would concur in what is said in 12 Bradwell, *supra*, as to the necessity of assent thereto. As to the second proposition, that the measure of damages for the injury or loss of the animals should be computed at the value or cost of the same at the time and place of shipment, it presents another and different question. All the authorities referred to above which hold that a common carrier of persons or property can not by agreement, however plain and explicit, even partially exempt itself from liability in damages to the party injured when such injury is the result of gross negligence of the carrier, its servants or agents, base their ruling upon the ground of public policy. And those courts which hold that it may partially limit its liability also hold that such limitation must be reasonable.

Under the view we take of the agreement in this case we are not called upon nor is it necessary for us to decide as to which of these conflicting rules is correct, as we hold the agreement entered into between the shipper and the appellant at the time of the shipment is valid under either view of the authorities above cited. The value of the animal at the time and place of shipment was fixed as the basis upon which the damages were to be computed. There was nothing unreasonable or against public policy in this limitation, fixing the value at the time and place of shipment as the basis upon which the damages should be computed. The jury should have been instructed to compute the damages on this basis.

For the errors herein indicated the cause is reversed and remanded.

Reversed and remanded.