EELLS *v.* ST. LOUIS, K. & N. W. RY. Co., (KELLY, Intervener.)

*(Circuit Court, S. D. Iowa, E. D.)*

1. CARRIERS OF FREIGHT — LIABILITY FOR NEGLIGENCE — LIMITATION BY CONTRACT — VALUATION.

The shipper, by rail, of a horse worth $1,500, signed a live-stock contract providing that "the liability of the company for valuable live stock shall not exceed $100 for each animal." *Held,* that this was not merely an agreed valuation of the animal, but an attempt to limit the carrier's responsibility for negligence, and was therefore void. *Hart* v. *Railroad Co.,* 5 Sup. Ct. Rep. 151, 112 U. S. 331, distinguished. *Railroad Co.* v. *Lockwood,* 17 Wall. 357, followed.

2. SAME—FOLLOWING STATE DECISIONS.

The question whether a carrier can stipulate for exemption for liability for its own negligence is a matter of general law, upon which the federal courts will exercise their own judgment, independent of state decisions, although jurisdiction attaches merely by virtue of the citizenship of the parties, and the contract was made and to be performed within the state.

In Equity. Bill by Dan P. Eells, trustee, etc., against the St. Louis, Keokuk & Northwestern Railway Company. Intervening petition by Isaac Kelly against the receiver, W. W. Baldwin, to recover the value of a horse alleged to have been killed by the receiver's negligence while in course of transportation. Heard on exceptions to the master's report. Overruled.

*W. J. Roberts,* for intervener.

*H. H. Trimble* and *Palmer Trimble,* for receiver.

WOOLSON, District Judge. Pending the proceedings in the original action, Isaac Kelly, by leave of the court, filed his petition of inter-

vention against W. W. Baldwin, as receiver of the defendant railway company. His cause of action is, in substance, that about August 6, 1887, and while said Baldwin, as receiver, was operating said line of railway, intervener was the owner of a valuable horse, of the value of $1,500, which intervener delivered to said receiver for transportation over said railway; and that, while being so transported, said horse, by the carelessness and negligence of said receiver, was injured and damaged in the sum of $1,200, for which intervener demands judgment. An order of reference to the master was entered. Defendant receiver's answer (so far as affecting the question now under consideration) alleges that said horse was shipped as a common horse, and not as a valuable horse, and at the usual tariff for common horses; and that the shipper signed a "live-stock contract," which contains the provision: "It is also agreed that the liability of the company for damage to valuable live stock shall not exceed one hundred dollars for each animal, except by special agreement;" and thereby the liability, in case said horse was damaged, was limited to $100; and that said shipper understood that he was shipping said horse on a valuation of $100, and that if he shipped said horse at a greater valuation he would have to pay a greater rate than the rate he did pay. To so much of said answer as sets up that the shipper "understood" the shipping to be at the valuation of $100, and that the shipping at a higher valuation would compel the payment of a higher rate than that paid, the intervener filed exceptions, on the ground that the writing set up was conclusive; and to the contract limitation set up he excepts on the ground that the receiver cannot thus limit his liability for negligence. The master heard counsel upon these exceptions to answer, and has filed his report sustaining them. To this report the receiver has filed exceptions. The only matter now to be decided is raised by the exceptions to the master's report.

Counsel do not disagree that under the authority of *Hart* v. *Railroad Co.*, 112 U. S. 331, 5 Sup. Ct. Rep. 151, a public carrier may agree with the shipper as to the valuation of the property carried; and that such valuation, forming the basis of the charges by the carrier, and in a contract fairly made and agreed to by the shipper before the shipment is entered upon, is binding on the shipper, and limits the extent of his recovery, even as against the negligence of the shipper. The receiver contends that the contract above quoted is within the rule announced in the *Hart Case*. The master's finding is adverse to this contention, and holds this contract provision is, in effect, an attempt to stipulate against the consequences of the carrier's negligence, and not an agreement as to valuation. Counsel for receiver do not in their brief combat the proposition that a public carrier may not by contract stipulation exempt himself from the consequences of his negligence. But they contend that the contract in question, taken in connection with the averments of the answer, makes an agreed valuation of the property, and therefore conforms to the *Hart Case*, *supra*.

The averments of the answer cannot be permitted to enlarge the contract provision. The answer contains no allegations entitling the receiver

to a reforming of the contract. All previous and contemporaneous verbal negotiations and agreements are merged in the contract, and the contract cannot be varied or enlarged by parol testimony. It must stand or fall by its own plain terms. 1 Greenl. Ev. § 305; Ang. Carr. (4th Ed.) § 229; *Delaware* v. *Iron Co.*, 14 Wall. 579; *Hart* v. *Railroad Co.*, 112 U. S. 331, 5 Sup. Ct. Rep. 151; *Gilbert* v. *Plow Co.*, 119 U. S. 491, 7 Sup. Ct. Rep. 305.

In determining the question presented, with reference to the contract provision attempting to exempt the carrier from the consequences of his own negligence, regard must be had to the pleadings herein and the issues thereby presented. This action does not grow out of any liability of the receiver other than that of negligence. The petition of intervention counts on negligence of the receiver, and on negligence alone. And, however greatly the intervener may have been damaged, yet, if the damage was occasioned from any other cause than negligence, the intervener cannot recover herein. Whatever might, therefore, be the effect of the contract provision in any case not founded on the carrier's negligence is foreign to the question under consideration. The only question to be determined is whether this contract provision is valid and enforceable against the intervener when the property shipped has been damaged through the receiver's negligence.

The contract of shipment was made and shipment wholly performed within the state of Missouri, and counsel for the receiver have cited certain cases decided by the supreme courts of Missouri and Illinois, which are claimed to be decisive in favor of the receiver's position herein. However highly we may regard the decisions of those courts, and the learning manifested in their decisions, it is unnecessary to examine these cases; for the supreme court of the United States, by an unbroken line of decisions extending through many years, and in cases wherein was involved the liability of a common carrier, has established the rule that the right of a carrier of goods or passengers, by land or water, to stipulate for exemption from liability for his own negligence, is not a local question, upon which the decision of a state court must control; but that such question is a matter of general law, upon which the courts of the United States will exercise their own judgment, even when their jurisdiction attaches only by reason of the citizenship of the parties, in an action at law, of which the courts of the state have concurrent jurisdiction, and upon a contract made and to be performed within the state. *Myrick* v. *Railroad Co.*, 107 U. S. 102, 1 Sup. Ct. Rep. 425; *Railroad Co.* v. *Lockwood*, 17 Wall. 357; *Bucher* v. *Railroad Co.*, 125 U. S. 555, 8 Sup. Ct. Rep. 974. And see *Liverpool & G. W. Steam Co.* v. *Insurance Co.*, 129 U. S. 397, 9 Sup. Ct. Rep. 469, and cases cited therein.

*Scruggs* v. *Railroad Co.*, 18 Fed. Rep. 318, was an action tried in the eastern district of Missouri to recover full value of goods lost by fire through the carrier's negligence, while being carried over the line of the defendant. The bill of lading provided that, unless the shipper had the values of his packages inserted in the bill of lading given him, the car-

rier would not be liable or responsible for an amount exceeding $500 on each package. No values were inserted in the bill of lading for the shipment in suit. Judgment for $4,077. In this decision Judge TREAT, in deciding against the carrier's contention that the shipper should be limited in his recovery to $50 per package, says:

"The evidence disclosed that the loss was caused by the negligence of the defendant. * * * The loss having occurred through the negligence of the defendant, plaintiffs are entitled to recover the full value of the goods forwarded, with interest."

The judgment just cited finds abundant support in *Hart* v. *Railroad Co.*, *supra*. Previous to the decision of the *Hart Case* there had existed much disagreement among the courts of last resort in several states, in their holdings in this question; and there yet obtains in a few states a different doctrine from that announced in the *Hart Case*. But the well-considered and elaborately argued opinion in the *Hart Case*, receiving, as it did, the unanimous concurrence of all the justices of that eminent court, has done much towards bringing American law to the general acceptance of the doctrine therein announced. In the *Hart Case* the live-stock contract, which constituted the bill of lading, was signed by the shipper, and provided, among other provisions, that the rate of freight therein named was paid, "on condition that the carrier assumes a liability on the stock to the extent of the following agreed valuation: If horses or mules, not exceeding $200 each; if cattle or cows, not exceeding $75 each," etc. The live stock shipped, for whose injury damage was claimed in that action, were valuable horses and other property. Plaintiff, Hart, claimed as damages $15,000 for one horse killed, and $3,500 for the other four horses injured. The case was tried below in the eastern district of Missouri, and the ruling of Judges McCRARY and TREAT, upon the validity of this contract provision, and sustaining it, is found in 7 Fed. Rep. 630. In delivering the ruling (page 632) the circuit court say: "The only question here is whether a man who delivers live stock to railroad company, to be transported upon cars, has a right to stipulate with the company concerning the value of the property." And testing the contract by the rule laid down in *Railroad Co.* v. *Lockwood*, *supra*, that the limitation must be reasonable in the eye of the law, the circuit court, speaking through Judge McCRARY, say that "I do not see anything in it contrary to equity and fair dealing;" and thereupon the ruling is made "that the recovery must be limited by the amounts fixed in the contract," and the charge to the jury is made accordingly, and a verdict directed in accordance with the charge. In the supreme court no question is raised by counsel save that pertaining to the validity of the contract provision and the correctness of the charge below, (112 U. S. 331, 5 Sup. Ct. Rep. 151;) that is, the right of the carrier to limit, through the provision in question, its liability for damages caused by its negligence as a common carrier. The previous decisions of that court had left no doubt as to the general doctrine obtaining in the United States courts that while a common carrier might, by special contract, limit other common-law liability, he could not stipulate for exemption

from the consequences of his negligence.     *York Co.* v. *Central R. Co.*, 3 Wall. 107; *Railroad Co.* v. *Lockwood, supra; Bank* v. *Express Co.*, 93 U. S. 174; *Railroad Co.* v. *Stevens*, 95 U. S. 655.

And in the later cases the doctrine of the *Lockwood Case, supra,* (and which Judge McCRARY recognized in the *Hart Case,* below,) had been approved and followed, that no exemption from responsibility could be made by the carrier except such as was just and reasonable in the eye of the law; and that it was not just and reasonable, in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself and his servants.     In complete harmony with this doctrine, the supreme court, in the *Hart Case, supra,* recognized the rule that where the shipper, by imposition and fraud, misrepresented the nature or the value of the article shipped, he destroyed his claim to indemnity; he had thus attempted to deprive the carrier of the right to be compensated proportionately to the value of the article and the risk thereby assured, and had lessened the vigilance which, it may be properly assumed, the carrier would otherwise have exercised.     Therefore it is but reasonable to permit the carrier to urge a corresponding qualification of the liability which, otherwise, the law would fasten upon him.     And with reference to the contract provision in the *Hart Case,* the supreme court, speaking through Justice BLATCHFORD, say:

"It is but just to hold the shipper to his agreement, fairly made as to value, even when the loss or injury has occurred through the negligence of the carrier. * * * The agreement as to value, in this case, stands as if the carrier had asked the value of the horse, and had been told by the plaintiff the sum inserted in the contract. The limitation as to value has no tendency to exempt from liability from negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. * * * The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of transportation between the parties to the contract. * * * It is just and reasonable that such a contract, fairly entered into and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy."

These extracts from the opinion in the *Hart Case* may be properly taken as a basis upon which is reached the decision by the court announced (112 U. S. 331, 5 Sup. Ct. Rep. 151) in the following words:

"The distinct ground of our decision in the case at bar is that where a contract, of the kind signed by the shipper, is fairly made, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by negligence of the carrier, the contract will be upheld as a proper and lawful method of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

In the case at bar, the contract provision neither states nor attempts an agreed valuation of the animal shipped.     Whether the animal is of $100, $1,000, $10,000, or other value, the contract is silent.     But the contract expressly provides for a limitation of liability to $100, without

reference to the valuation of the animal shipped; and for the negligent killing of a horse of the value of $10,000, at time of shipment, there could be recovered, if the contract provision be upheld, no greater damages than for a horse of but $100 in value. Such a contract cannot be said to be, in the eye of the law, just and reasonable, in its attempt to limit the responsibility for the negligence of the carrier. When tested by the extracts above given from the *Hart Case*, the failure of the contract in case at bar to meet that test becomes strikingly manifest. "The agreement as to value in this [Hart] case stands as if the carrier had asked the value of the horse, and had been told by the shipper the sum inserted in the contract." The exceptions to the master's report are therefore overruled.