## GARDNER v. SOUTHERN RAILROAD CO.

### (December 4, 1900.)

1. *Carriers—Negligence—Loss—Stipulations—Railroads.*

   A common carrier can not, by express stipulation, exempt itself from loss caused by its own negligence.

2. *Carriers—Negligence—Contract—Loss—Valuable Consideration—Railroads.*

   A common carrier can make a valid agreement, fixing the value of shipments, in case of loss by its negligence, if such agreement be reasonable, or based on a valuable consideration, and it must clearly appear that such was the intention of the parties.

3. *Carriers—Reduced Valuation—Burden of Proof—Railroads.*

   The burden of showing the valuation clause in a bill of lading reasonable, or to have been made for a valuable consideration, is on the carrier.

4. *Evidence—Burden of Proof—Bill of Lading—Valuation.*

   A bill of lading is *prima facie* evidence of the actual value of the property therein named.

CIVIL ACTION by J. W. Gardner against the Southern Railway Company, heard by Judge *E. W. Timberlake* and a jury, at May Term, 1900, of ROWAN Superior Court. From judgment for plaintiff, defendant appealed.

*R. Lee Wright* and *T. F. Klutz,* for the plaintiff.
*A. H. Price,* for the defendant.

DOUGLAS, J. This is an action for the value of a carload of stone destroyed through the negligence of the defendant. The following, taken from the case on appeal, includes

all the evidence offered by either side: "It was admitted by
defendant that it was negligent, and liable for the value of
the stone lost and destroyed; but defendant contended that
the value was the amount agreed on in the bill of lading.
Plaintiff testified that two years ago defendant placed a car
on a siding about four miles from Salisbury to enable him
to load the same with stone for shipment to Danville, con-
signed to a purchaser there, whose name appears in the bill
of lading. After the car was loaded, it was moved by the
company to another place, and afterwards got loose, and
*became* a wreck, by reason of defective brakes. There was
no depot at the siding, nor was there an agent at that point.
Plaintiff obtained from the agent at Salisbury a blank bill
of lading, and filled it up in his handwriting, and signed the
same. He was instructed how to do this by the agent, and
also instructed to value the load of stone at the rate of 20
cents a cubic foot, which, as plaintiff further testified,
amounted to the sum of $46.60. Plaintiff testified that the
stone was worth $218. This was a release shipment.
Defendant objected to plaintiff's testifying that the stone
was worth a greater sum than the amount specified in the
contract, or bill of lading. Objection was overruled, and
there was an exception to this ruling by defendant. Defend-
ant introduced the bill of lading, which was admitted to be
in the handwriting of, and signed by, plaintiff." It is unne-
cessary to set out the bill of lading in full, as the greater
part of it has no relation whatever to the question at issue,
and apparently was never intended to have. It seems to
be a general form used indiscriminately for all kinds of
business, and merely filled in with a few names and figures
to fit in some degree the particular shipment. That it is
not a special contract for this particular car-load of stone
shipped from a siding near Salisbury to Danville is apparent

from the following express stipulations. Among other things, the bill of lading, which is of considerable length, provides that: "As the packages aforesaid must pass through the custody of several carriers, it is understood, as a part of the consideration on which said packages are received, that the exemptions from liability made by such carriers, respectively, shall operate in the carriage by them, respectively, of said packages as though herein inserted at length, and especially that neither said carriers, nor either of them, shall be liable for leakage of any kind of liquids, nor for the losses by the bursting of casks, or barrels of liquids, arising from expansion and unavoidable causes, breakage of any kind of glass, carboys of acid, or articles packed in glass, stoves, or stove furniture, castings, machinery, carriages, furniture, musical instruments of any kind, packages of eggs, or for loss or damage on hay, hemp, cotton, or the evaporation or leakage of alcohol, or leakage of oil of any description, or for damage to perishable property of any kind, occasioned by delays of any kind or change of weather, or for the loss or damage on the sea or rivers.   *   *   *   It is further understood and agreed between the parties hereto, that the railway company above mentioned, or any connecting railroad company, shall not be liable for any damages by fire, or collisions on the rivers and sea, or for loss or damage by storm or accident on water, as the Southern Railway Company and connecting railroads assume no marine risks whatever." On its face appear the following words and figures: "Val. 20 cts. cubic foot." This is the only allusion it contains as to the value of the stone; nor is there the slightest intimation that this valuation in any way affected the rate of freight, or was based upon any consideration inuring to the plaintiff. It is not even stipulated that this valuation shall be binding upon either party, unless it is found by implication in the

following clause: "In consideration of the facilities afforded
by this through bill of lading, and the through rates of trans-
portation agreed upon, ———— hereby consent to all of its
provisions, and expressly agree to release the transportation
companies and lines concerned in this bill of lading from any
and all marine risks." It is somewhat difficult to see the
direct application of this clause to the case at bar. The
entire distance from the quarry to Danville is over the
defendant's own line, and hence there is nothing in the nature
of a through shipment, and certainly nothing that can prop-
erly be called marine risks. Nor does it appear that the
plaintiff was afforded any unusual facilities. It is the duty
of a common carrier to furnish all reasonable facilities, and
the mere furnishing of such facilities affords no basis for any
demand for additional compensation, or for the waiver of
legal rights. The defendant admits that the loss occurred
through its own negligence. It is a well-settled rule of law,
practically of universal acceptance, that for reasons of public
policy a common carrier is not permitted, even by express
stipulation, to exempt itself from loss occasioned by its own
negligence. *Mitchell v. Railroad Co.,* 124 N. C., 236; *Hart
v. Railroad Co.,* 112 U. S., 331; *Phoenix Ins. Co. v. Erie
and W. Transp. Co.,* 117 U. S., 322; *Liverpool and G. W.
Steam Co. v. Phoenix Ins. Co.,* 129 U. S., 397; *California
Ins. Co. v. Union Compress Co.,* 133 U. S., 387, 415; *Con-
stable v. Steamship Co.,* 154 U. S., 51, 62. The measure of
such liability is necessarily the amount of the loss; and if a
common carrier is permitted to stipulate that it shall be
liable only for an amount greatly less than the value of the
property so lost—that is, for only a small part of the loss—
it is thereby exempted *pro tanto* from the results of its own
negligence. Such a course, if permitted, would practically
evade the decisions of the courts, and nullify the settled

GARDNER *v.* SOUTHERN RAILROAD CO.

policy of the law. We do not mean to say that there are no cases where a common carrier can make a valid agreement as to the value of the article shipped, but all such agreements must be reasonable, and based upon a valuable consideration. Moreover, it must clearly appear that such was the intention of the parties. This Court has said in *Hinkle v. Railway Co.,* 126 N. C., 932, 938: "All such contracts of limitation, being in derogation of common law, are strictly construed and never enforced, unless shown to be reasonable. Any doubt or ambiguity therein is to be resolved in favor of the shipper; and it has been further held that the burden of proof rested upon the carrier of showing that all such stipulations and exemptions were reasonable"—citing *Compania La Flecha v. Brauer,* 168 U. S., 104, 118; 4 Elliott, R. R., sec. 1424, and other cases. Again, we say in that case, on page 939, 126 N. C., page 350: "Stipulations in a bill of lading are similar in their nature to conditions in a policy of insurance. It is well settled, by the highest authority, that if a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured, and against the construction which would limit the liability of the insurer.. *Imperial Fire Ins. Co. v. Coos Co.,* 151 U. S., 452; *London Assurance v. Campania de Moagens de Barriero,* 167 U. S., 149." The defendant relies entirely upon the case of *Hart v. Railroad Co., supra,* but it does not apply to the facts before us. That case was expressly put upon the ground that the rate of freight charged was based upon the valuation. The Court says, on page 336, 112 U. S., page 153: "The defendant receives the property for transportation on the terms and conditions expressed, which the plaintiff accepts 'as just and reasonable.' The first paragraph of the contract is that the plaintiff is to pay the rate of freight expressed 'on the condition that the carrier

assumes a liability on the stock to the extent of the follow-ing-agreed valuation: If horses or mules, not exceeding two hundred dollars each.   *   *   *   If a chartered car, on the stock and contents in same, twelve hundred dollars for the car-load.'   *   *.   *   If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation." The facts of that case were essentially different from those before us, and on such facts the Court held that the stipulation was reasonable. In the case at bar it appears to us that the stipulation, if it amounted to such, was unreasonable, and without consideration. In this view we are sustained by the latest case we can find upon the subject—that of *Ward v. Railway Co.* (Mo. Sup.) 58 S. W., 28, in which the Supreme Court, of Missouri, says on page 31: "There was no consideration for the 'reduced valuation clause' in the contract of shipment, and to that extent it was void and inoperative, and should not have been considered by the jury." In the case at bar the defendant asked the Court to instruct the jury "that the quantum of damages was the sum agreed on in the bill of lading, and that was admitted by plaintiff to be in the sum of $46.60." The Court refused to give this instruction, and instructed the jury "to find from the evidence what the real value of the stone was; that the law presumes it to be only 20 cents per cubic foot, and the plaintiff must satisfy them by the greater weight of evidence that it was more than the amount men-tioned in the bill of lading; unless he had done so, to render their verdict for that amount, but, if so satisfied, to render a verdict for whatever sum they find from the evidence it was worth." In this charge and refusal to charge, we see no error. The judgment of the Court below is affirmed.