EVERETT v. RAILROAD.

(Filed April 11, 1905).

*Railroads—Liability as Insurer—Loss from Negligence—Released Bill of Lading—Rate Approved by Corporation Commission.*

1. A common carrier may relieve itself from liability as an insurer upon a contract reasonable in its terms and founded upon a valuable consideration, but it cannot so limit its responsibility for loss or damage resulting from its negligence.

2. Where a common carrier receives freight and fails to deliver on demand and admits loss and responsibility, the law will presume such loss attributable to its negligence.

3. Where the plaintiff shipped household goods over defendant's road on a released bill of lading wherein they were valued at $5 per hundred pounds, with a freight rate approved by the Corporation Commission, and a portion of the goods weighing 600 pounds was lost and the jury found the lost goods were worth $250, the plaintiff was entitled to recover the full amount of his loss as found by the jury.

ACTION by W. S. Everett and wife against the Norfolk and Southern Railroad Company and another, heard by *Judge G. S. Ferguson* and a jury at the Spring Term, 1904, of the Superior Court of PAMLICO County.

The plaintiff brought action for damages sustained by

failure of the defendants to deliver certain packages of freight, delivered to the defendant, The Norfolk & Southern Railroad Company, at Elizabeth City, N. C., on October 22, 1901, to be transported for hire over the lines of the defendant Norfolk & Southern Railroad Company, via Norfolk, Va., to Thomasville, N. C., on the Southern Railway. The defendants did not deny that certain parcels or packages of freight delivered to the Norfolk & Southern had not been delivered to the plaintiff on demand. Both defendants admitted that under the evidence, as it stood, each of them was liable to the plaintiff for damages, but contended that the amount was only $30.

The following facts also appeared from the record: The goods were shipped on a released bill of lading, wherein they were valued at $5 per hundred, with a freight rate approved by the Corporation Commission. The following were the approved rates on household goods calculated by 100 lbs. to be carried 100 miles:—

1. Unlimited in value and unreleased, classified as double first class rate 96 cents.

2. Unlimited in value but released, first class rate 48 cents.

3. Limited in value to $5. per 100 weight but unreleased, first class rate 48 cents.

4. Limited to $5. in value and released, fourth class rate 24 cents.

The goods were shipped under the last named classification and rate. The portion of goods lost weightd 600 lbs., which according to the valuation specified in the bill of lading would amount to $30. The jury found that the goods lost were worth $250. The question presented to the jury on the issue agreed upon was, What was the actual value of the goods lost by the defendant? The question submitted to the court under the admitted facts of the case and the verdict was "shall the plaintiff recover $250., the value of the articles lost as found by the jury, or $30., the value of the

articles as specified in the bill of lading." On the verdict, judgment was rendered in favor of the plaintiff for $250., and the defendant excepted and appealed.

*A. D. Ward,* for the plaintiff.
*F. H. Busbee & Son,* for the defendant.

HOKE, J., after stating the facts: It is the law of this State that a common carrier may relieve itself from liability as an insurer upon a contract reasonable in its terms and founded upon a valuable consideration, but it cannot so limit its responsibility for loss or damage resulting from its negligence. In *Capehart v. Railroad,* 81 N. C., 438 *Ashe, J.,.* commenting on several decisions as to the right of a common carrier by contract to restrict its liability, thus sums up the matter: "That a common carrier, being an insurer against all loss and damage except those occurring from the act of God and the public enemy, may, by a special notice brought to the knowledge of the owner of goods delivered for transportation or by express contract, restrict its liability as an insurer where there is no negligence on its part. 2. That a common carrier cannot, even by contract, limit its responsibility for loss or damage resulting from its want of the due exercise of ordinary care." Elsewhere in the opinion it is held, as stated, that a contract restricting liability as an insurer must be for valuable consideration and reasonable in its terms.

The defendant having received the goods for transportation as a common carrier and failed to deliver on demand, and also admitting both loss and responsibility, the law will presume such loss attributable to the defendant's negligence. *Mitchell v. Railroad,* 124 N. C., 236; *Hosiery Co., v. Railroad,* 131 N. C., 238; *Parker v. Railroad,* 133 N. C., 335. This presumption of the law, arising from the facts proved and admitted, is confirmed by the statement that the goods

were shipped released, that is, released from liability against which the defendants were permitted to contract, to-wit, loss occasioned otherwise than by their negligence.

We have it, then, established that the defendants by their negligence as common carriers caused the loss of the plaintiff's household goods delivered to them for transportation, to the pecuniary value of $250.; that by the valuation specified in the bill of lading the amount of the loss is limited to $30 and the question presented to the court is, for which sum shall judgment be rendered? It is the law of this State, declared by repeated decisions, that common carriers are not permitted to contract against loss occasioned by their own negligence. They can contract neither for total nor for partial exemption from loss so occasioned. *Capehart v. Railroad, supra; Gardner v. Railroad*, 127 N. C., 293. The same doctrine is very generally accepted in other jurisdictions. It would be an idle thing for the courts to declare the principle that contracts for total exemption from such loss are subversive of public policy and void, and, at the same time, permit and uphold a partial limitation which could avail to prevent anything like adequate and substantial recovery by the shipper. Therefore it is held that any limitation of liability by contract designed for the purpose is forbidden. *Hosiery Co., v. Railroad, supra.*

In *Gardner v. Railroad, supra,* it is said: "It is a well settled rule of law, practically of universal acceptance, that for reasons of public policy a common carrier is not permitted even by express stipulation to exempt itself from loss occasioned by its own negligence. Citing *Steam Co. v. Phoenix Ins. Co.,* 129 U. S., 397 and numerous other decisions, it is further said: "The measure of such liability is necessarily the amount of the loss, and if the common carrier is permitted to stipulate that it shall be liable only for an amount greatly less than the value of the property so lost, that is for a small part of the loss, it is thereby exempted

*pro tanto* from the results of its own negligence. Such a course, if permitted, would practically evade the decisions of the courts and nullify the settled policy of the law."

In *Moulton v. Railroad,* 31 Minn., 89, it is said: "The same reasons which forbid that a common carrier should, even by express contract, be absolved from liability for its own negligence, stand also in the way of any arbitrary preadjustment of the measure of damages whereby the carrier is relieved from such liability. It would indeed be absurd to say that the requirement of the law as to such responsibility of the carrier is absolute and cannot be laid aside, even by the agreement of the parties, but that one half or three fourths of this burden, which the law compels the carrier to bear, may be laid aside by means of a contract limiting the recovery of damages to one half or one quarter of the known value of the property. This would be mere evasion which would not be tolerated."

In *Express Co. v. Blackman,* 28 Ohio St., 156 it is said: "To permit carriers to fix a limitation for the amount of their liability for negligence, is in effect to permit them to exempt themselves from such liability."

In Hutchinson on Carriers, 250 the doctrine is thus stated: "A majority of the authorities in the United States hold that it is contrary to public policy to permit the carrier to stipulate for exemption from the effects of the negligence of himself or his servants, and it is also held by a majority of the courts that a contract limiting the liability of the carrier to a certain sum in case of loss, that is, contracts designed to secure a partial exemption from liability, while valid and conclusive where the loss is occasioned by something other than the carrier's negligence, cannot be allowed where the loss was occasioned by the negligence of himself or his servant, but that in such case the owner may recover the full value of the goods."

The defendants do not seriously contend that such is not

the law of this State, nor do they controvert the position that
they would ordinarily be responsible for the amount of the
loss established by the verdict of the jury.   It is claimed by
the defendants, however that the amount of recovery against
them could only be for $30 because the value to that amount
was fixed under the rating established and sanctioned by the
Corporation Commission.   That the defendants are com-
pelled to take the goods at that rate, and as they can only
charge the rate, they should only be held to the valuation
which is made the basis of the rate.   This position is
plausible but not convincing.

In the first place, it is fair to conclude that the Corpor-
ation Commission intended that this regulation should be in
accordance with law, and that the valuation should only
obtain in case of loss not arising from negligence.   But if it
were otherwise, the result would be the same.   The Com-
mission is authorized to make just and reasonable rates of
freight, but it has no power to change the law nor to make a
rate based upon any such idea; and if this regulation has the
necessary effect of enabling the common carriers of the State
in shipments of this kind to evade their responsibility for
negligence, the conclusion is not that the law is thereby
changed, but that the regulation itself is invalid.

We are satisfied that in this instance both the Commission
and the railroads were prompted by a laudable motive to af-
ford shippers of small means a lower freight rate.   But we
cannot allow such consideration in a particular case to change
the rule of law that we here uphold.   It is one in which the
entire public is interested as well as the individual shipper,
established and adhered to for grave and weighty reasons, and
necessary for the protection of the great body of shippers.   A
principle so vital to the public interest should not be altered,
or weakened because, in a given instance, the motive is good
and the particular result desirable.   If this valuation en-
tered as an essential element into the rate here contended for,

and the result would enable carriers to evade the law, the rate itself is invalid and to that extent is not a binding regulation.

There is a class of cases which permits the shipper and carrier to make an agreed valuation of goods delivered for transportation, and which, under certain circumstances in case of loss, will hold the shipper to the agreed valuation, though this be less than the actual value and though the loss be occasioned by the carrier's negligence. In some jurisdictions, contracts of this kind are not sanctioned in respect to loss occasioned by negligence. In others, such agreements are upheld where the carrier being without knowledge or notice as to the true value, the parties agree upon a valuation of the particular goods shipped, approximating the average value of ordinary goods of like kind, and make such valuation the basis of a just and reasonable shipping rate. In yet others, such agreements would seem to be upheld where the agreed valuation is known to be less than the actual value, provided the same are fairly entered into and made the basis of the shipping rate.

But in none of these is the valuation relied upon in this bill of lading sactioned or justified to the extent here claimed for it. So far as we can discover, all of them condemn an effort to limit liability for negligence by a uniform predetermined valuation arbitrarily fixed and placed in a printed bill of lading without any reference to the actual value of the property, and without any estimate made or attempted to value the property of the particular shipment, more especially where the difference between the stipulated and actual value is so pronounced that the evident purpose and necessary effect are to practically deny recovery for negligence.

The better considered authorities, as far as we recall, forbid and condemn a limitation of liability for negligence under the circumstances here described. See *Moulton v. Railroad, supra; Railroad v. Keener,* 93 Ga.; 108; *Railroad v. Wynn,* 88 Tenn., 320; *Willock v. Railroad,* 166 Pa., 184; *Express*

*Co. v. Blackman, supra. Railroad v. Keener* was a case very
much like the one we are now considering. In that case
*Simmons, J.,* in delivering the opinion of the court said:
"Where a shipper enters into an express contract with a
common carrier, by which he agrees in consideration of a
reduced rate of freight that the carrier shall not be liable
for more than a stated sum in case the goods shipped are
lost while in the carrier's possession, the contract will be
upheld as to loss not involving negligence on the part of the
carrier, but carriers cannot by any special contract exempt
themselves from liability for loss occasioned by their
negligence, and this is so as well where the contract provides
for partial or limited exemption as where it contemplates
total exemption from liability." After stating that under
certain circumstances an agreed valuation will be upheld,
*Judge Simmons* continues: "But the principle which re-
lieves the carrier from liability for more than the agreed
value does not apply where the valuation is merely arbitrary
and fixed without reference to the real value of the goods,
and this is understood by the carrier as well as the shipper.
In the present case there is no inquiry on the part of the
carrier as to the value of the goods, and it is clear that a
valuation of $5 per hundred pounds for wearing apparel and
household goods indiscriminately could not have been under-
stood to represent their actuel value. The contract in
question was simply an attempt to limit the liability of the
carrier without regard to the actual value of the property,
and it follows from what we have said that it was inoperative
for that purpose, if the loss was occasioned by negligence on
the part of the defendant. There being no explanation as to
how the loss occurred, the presumption is that it resulted
from the defendant's negligence."

It is not claimed here that the carrier was misled or de-
ceived in any way as to the kind or value of these goods.
There is neither allegation nor issue addressed to any such

question; and, as we understand it, the defendants did not intend or desire to raise it. Some of the goods lost were perhaps not correctly classified as household goods, but the amount properly described as household goods was more than sufficient to justify the verdict. As a matter of fact, no inquiry was made about the value of the goods and no statement made concerning them one way or the other. The agent just classified them at the established rate and uniform valuation provided for by the regulation and printed in the bill of lading, and no effort was made to estimate or put any value on the goods of this particular shipment.

The defendants rest their defense and, as we understand, desired to rest it on the sole ground that they received the goods at a rate and on a valuation established and sanctioned by the Corporation Commission, and claim that by virtue of such regulation the recovery is limited to $5 per hundred pounds, amounting in the goods lost to $30.

We declare our opinion to be that the valuation does not restrict the liability of the carriers for losses arising from their negligence; and that the rules of the Corporation Commission could give it no such effect, even if so intended. The plaintiff is entitled to recover the full amount of his loss as declared by the verdict of the jury.

The judgment of the Court below is

Affirmed.