WINSLOW BROS. & CO. v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 3 November, 1909.)

An agreement in a bill of lading for shipment of live stock limiting the value thereof not to exceed $100 a head, upon the consideration of a less freight rate, is valid, and in such cases recovery against the carrier cannot exceed the amount named. *Jones v. Railroad,* 148 N. C., 583, cited and approved.

CLARK, C. J., dissenting *arguendo.*

APPEAL by plaintiffs from *O. H. Allen, J.,* May Term, 1909, of SAMPSON.

This action is to recover the sum of $201, the alleged value of a mule, killed while being transported from Kansas City by defendant. From the judgment rendered the plaintiff appealed. The facts are stated in the opinion of the Court.

*Fowler & Crumpler* and *C. M. Faircloth* for plaintiffs.
*Davis & Davis* and *F. R. Cooper* for defendant.

BROWN, J. The only assignment of error is to the ruling of his Honor holding the plaintiffs to the value of $100 agreed upon in the bill of lading under which the live stock were shipped.

The bill of lading set out in the record is identical in all respects with the one printed in full in Jones against this same

WINSLOW *v.* RAILROAD.

carrier (148 N. C., 583), and the point was fully discussed and decided against the plaintiffs in that case.

The case at bar falls squarely within the principles laid down in the opinion of the Court in that case, as well as within the concurring opinion written by *Mr. Justice Hoke* and concurred in by *Chief Justice Clark.* In that concurring opinion it is well and wisely said: "This rule is particularly applicable to shipments of stock in quantities, and eminently just to both parties to such contracts, affording to the shipper a fair and reasonable shipping rate and protecting the carrier from exorbitant and unconscionable recoveries by reason of excessive valuations which it had no opportunity to ascertain or to resist successfully, and for which it has received no adequate compensation." We find nothing whatever in the record which takes the case out of that rule or distinguishes it from the *Jones case,* where the subject is fully discussed and many authorities cited.

It would be a work of supererogation to repeat here the reasons that led us to our conclusion.

In addition to the authorities cited in the opinion of the Court the following additional cases will be found to fully sustain our former judgment: *Winslow v. Railroad* (South Carolina), 60 S. E. Rep., 709; *Express Co. v. Caldwell,* 21 Wall., 264; *Hart v. Railroad,* 112 U. S., 331: *Railroad v. Henlin,* 52 Ala., 606; *Railroad v. Henlin,* 56 Ala., 368; *Railway v. Harwell,* 8 So. Rep., 649; 11 So. Rep., 781; *Railroad v. Lesser,* 46 Ark., 236; *Railroad v. Weakly,* 7 Am. St. Rep., 104; *Railroad v. Harmon,* 17 Ill. App., 640; *Railroad v. Sowell,* 90 Tenn., 17; *Railroad v. Davis* (Texas), 2 Willson Civ. Cases, Court of Appeals, 191; *Railroad v. Caldwell* (Texas), 3 Willson, 439; *Zouch v. Railroad,* 36 W. Va., 524, reported in 17 L. R. A., 116, where many other supporting authorities are cited.

In *Johnstone v. Railroad,* 39 So. Ca., 61, a case on all fours with this, the late *Chief Justice McIver,* a very able judge and a just man, delivering the opinion of the court, says: "But when, as in this case, the shipper has obtained an advantage, in consideration of which he has fixed the value of the property shipped, the case becomes still stronger. The shipper, having reaped the advantage obtained by the special contract, must, as a matter of common justice, bear the burden which such contract imposed."

The judgment of the Superior Court is

Affirmed.

CLARK, C. J., dissenting: No case of more vital importance than this to the business interests of the State, especially to all

who ship freight by common carriers, is likely to arise. Great corporations, with immense aggregations of capital, do the bulk of the carrying business of to-day. The shipper does not and cannot deal on an equal footing with them. He is helpless and is as the mere dust in the balance if the law is not strong enough to enforce just dealings with him. *Bradley, J., Lockwood v. Railroad,* 84 U. S., at p. 379.

Legislation to this end has been recently found necessary in the enactment of statutes giving penalties where these carriers refuse to receive goods upon tender or to carry and deliver within a reasonable time. But, long ago, when carriers were less great and powerful, it was found necessary to hold, in protection to the shipper, that the carrier could not contract against its own negligence. The immense force of the legal talent employed by these great corporations has for years presented to court after court argument to withdraw from the shipper the protection of this most just and necessary rule of the common law, as will be seen by reference to the numerous cases in the reports of the various States of this Union. This has been met in some of the States by acts of the Legislature forbidding such concession to the carriers, as in Iowa, Kansas, Mississippi, Nebraska, etc., in some others, as in Texas, even by constitutional provision to the same effect, and in England a partial departure from the common-law rule by the courts was promptly corrected by an act of Parliament. Where this has not been done, the furthest that any court has yielded the common-law rule that the carrier shall not contract against his own negligence is that the carrier may stipulate for a reasonable and just sum to be paid in case of loss, if there is a *bona fide* valuation, made voluntarily by the shipper and the carrier, but the court will hold void "an arbitrary preadjustment of the measure of damages." Yet that is exactly what, by the evidence, was done in this case. There was in proof no examination of the stock in this car by the agent of the carrier and the shipper, with a voluntary agreement as the fair average value of the mules to be paid in case of their loss. Such agreement some courts have upheld, not as a stipulation against liability for its own negligence by the carrier, but as a method of fairly adjusting the loss beforehand. The objection to this apparently fair arrangement is that it has led to the practice of which this case is an example.

Here the carrier had his "preadjusted arrangement" in the shape of a bill of lading, in which it had already printed, as a part of it, the provision that if any horse or mule was killed by the negligence of the carrier, the carrier's liability should "not

exceed $100 per head." The shipper was forced to take the terms the carrier offered, because the latter had prescribed of its head and power a most effective penalty of some $250 in the shape of additional freight if the carrier insisted on his common-law right to hold the carrier liable for the actual value of a mule if killed by the defendant's negligence. It was stated, and not denied in the argument here, that the alternative freight was $450 on this car load. The device resorted to requires no discussion. The carrier had as much right to make the additional freight $1,000 as $250, for the addition is so exorbitant that it shows its real purpose, the actual freight paid being $205. In *Brown v. Tel. Co.,* 111 N. C., 187; 32 Am. St., 793, we held that a telegraph company could not stipulate against liability for its own negligence, though there the additional charge was only a few cents (one-half of the original charge), and that for additional service of repeating the message.

Indeed, the stipulation here is not even "an average." If the animal is worth ever so much more than $100, when it is lost by the carrier's negligence, the shipper can in no event recover more than $100; while if the animal is worth less, the shipper can recover, under the terms of this bill of lading, only its true value. This is not a contract, but, in homely, every-day language, "a jug-handle proposition," all on one side. Such stipulation was held, therefore, invalid. *Conover v. Express Co.,* 40 Mo. App., 31; *Railroad v. Sowell,* 90 Tenn., 17; *Eels v. Railroad,* 52 Fed., 903; *Calderon v. S. S. Co.,* 69 Fed., 574, and in other cases.

It is not a contract besides, because it was not voluntary. The shipper had to take what was tendered him. He could not pay $250 penalty to get his rights as they are recognized by the common law and our own decisions, and unrepealed by any statute.

It was, further, not a contract because there was no actual agreement shown—which is essential to a contract—as to the valuation, no *bona fide* examination and valuation of the average value of the mules in this car load, which it devolved upon the defendant to prove, but merely a printed rate in the bill of lading fixing $100 as an "arbitrary preadjustment," which all courts have denounced as illegal. *Railroad v. Hall,* 124 Ga., 322; 4 L. R. A. (N. S.), 898, and notes; Sutherland Damages, sec. 904; Hutchinson on Carriers, 250; 6 Cyc., 392, and cases there collected; 5 A. & E. (2d Ed.), 308, and cases there cited; 4 Elliott R. R., sec. 1497, citing a long list of authorities, State and Federal.

This Court has often passed on this matter, and our decisions should not be overruled, under which we have heretofore main-

tained the protection which shippers are enti'led to at common law, that a carrier "shall not stipulate against liability for loss incurred by its own negligence." This was reaffirmed by a unanimous Court as late as *McConnell v. Railroad,* 144 N. C., 90, citing *Everett v. Railroad,* 138 N. C., 68; *Parker v. Railroad,* 133 N. C., 335; *Gardner v. Railroad,* 127 N. C., 296; *Mitchell v. Railroad,* 124 N. C., 238.

In *Gardner v. Railroad,* 127 N. C., 293, it is said: "It is a well-settled rule of law, practically of universal acceptance, that for reasons of public policy a common carrier is not permi'ted, even by express stipulation, to exempt itself from loss caused by its own negligence," citing *Steam Co. v. Ins. Co.,* 129 U. S., 397, and numerous other decisions.

In *Everett v. Railroad,* 138 N. C., 68, *Hoke, J.,* speaking for a unanimous Court, says: "It is the settled law of this State that a common carrier may relieve itself from liabili'y as an insurer upon a contract reasonable in its terms and founded upon a valuable consideration, but *it cannot so limit its loss or damage resulting from its negligence."* And, he adds, "They can contract nei'her for total nor partial exemption so occasioned. *Capehart v. Railroad,* 81 N. C., 438; *Gardner v. Railroad,* 127 N. C., 293. The same doctrine is very generally accepted in other jurisdictions." *Judge Hoke* further says: "It would be an idle thing for the courts to declare the principle that contracts for total exemp'ion from such loss are subversive of public policy and void, and at the same time permit and uphold a partial limitation," ci'ing *Hosiery Co. v. Railroad.* 131 N. C., 238. He also quotes *Express Co. v. Backman,* 28 Ohio St:, 156: "To permit carriers to fix a limitation to the amount of their liabili'y for negligence is. in effect. to permit them to exempt themselves from such liability." He quotes wi'h approval extracts from *Moulton v. Railroad,* 31 Minn., 89; Hu'chinson Carriers, sec. 250, and other au'hori'ies. To same effect, *McConnell v. Railroad,* 144 N. C., 90, and cases cited.

Has that been attempted here? It is agreed by the parties—

"1. That said mule, while in possession of defendant in transit, was ruined and rendered wholly worthless *by and through the negligence of the defendant,* and was thereupon killed.

"2. That the actual value of said mule was $201.81 and had cost plaintiff that sum." *Q. E. D.*

Still the defendant insists that the plaintiff can recover only $100. If so, what becomes of the above and other decisions of this and other courts which have preserved hitherto to shippers in this State, as elsewhere, the protection of the common-law rule that carriers cannot contract, in whole or in part, against

liability for loss *caused by their own negligence?* It has not been repealed by any statute.

· The defendant relies upon *Jones v. Railroad,* 148 N. C., 581. But that opinion, in its language, dealt only "with a voluntary agreement, fixing in good fai h a reasonable value on a species of property of uncertain value." Here there was not shown ei'her a "voluntary agreement" or any "fixing in good faith a valuation," nor was $100 for a mule which the defendant admits cost and was worth $200 a "reasonable value," nor was the species of property of "uncertain value," for rarely is the value of any property more readily ascertainable. But even had that decision lacked these limitations, a rule so long and universally recognized as essential to the protection of the public should not be set aside by the authority of a single decision; but, rather, if such decision were found to be contrary to the "well-settled law," as *Hoke, J.,* terms it in *Everett v. Railroad,* 138 N. C., 68 (approving *Gardner v. Railroad,* 127 N. C., 293), we should take this first opportunity to correct it and restore to the shippers of the State their ancient and accustomed right, of which they should not be deprived by any act of ours.

The device of charging more than double the freight if liability for loss caused by the carrier's own negligence is not waived (as to half the value of the freight) is transparent. Besides, as many courts have held, "the measure of care required of the carrier cannot be made to depend on the rate paid." Many other courts have held that "shipper and carrier are not on equal footing, and to allow the latter to absolve itself from the duty of exercising care and fidelity is inconsistent with the very nature of its undertaking." 4 Elliott Carriers, sec. 1497; *Railroad v. Lockwood,* 84 U. S., at pp. 379, 381, 384.

The duty of the carrier to carry without negligence goods entrusted to him is of the very essence of his duty to the public as a common carrier, and cannot be dispensed with, either in whole or in part, by any contract or device, even if voluntary on the part of a shipper, much less by an "arbitrary preadjustment," as in this case, to pay less than half the loss caused admittedly by the carrier's own negligence. When property entrusted to a carrier is damaged or lost by its negligence, no reason can be given why the true value shall not be ascertained and paid, as at common law.

This Court held in *McNeill v. Railroad,* 135 N. C., 682, that the carrier could not protect himself from liability for damage caused by its own negligence by a stipulation on the back of a free pass, when all charges had been remitted. Certainly it cannot do so in consideration of a mere alleged reduction in rate.

In *Brown v. Tel. Co.*, 111 N. C., 187, we held that a telegraph company could not stipulate against liability for its negligence even when the alternative rate, with such liability, was only fifty cents more, and that, too, for additional service in repeating the message. Certainly the defendant cannot stipulate against its negligence when the alternative rate, with the common-law liability, is $250 more, and more than double the rate. The difficulty of adjusting the damage in the loss of a mule or other goods is less than that of fixing the damage from the negligent transmission of a telegram.

If the defendant can in this case stipulate against over one-half of the loss, which it admits was caused by its negligence, it can stipulate against its liability for its own negligence beyond one-tenth or even one per cent. There is no safety to the public when any inroad, under any device, is allowed upon the common-law rule that common carriers cannot contract against liability for their own negligence. They are common carriers and cannot be released from the public duty to carry without negligence. The shipper cannot deal with them on an equal footing, and any contract relieving the carrier from his duty to the public, under whatever guise, should be held absolutely null and void.