———o———

## THE INDIANAPOLIS, PITTSBURG, AND CLEVELAND RAILROAD COMPANY v. ALLEN.

COMMON CARRIER.—*Special Contract.*—*Negligence.*—A common carrier cannot contract against liability for loss from his own ordinary negligence. Such a condition is void as against public policy.

SAME.—A contract for the shipment of live stock by a railroad company provided, that, in consideration of a certain reduced rate of transportation, the owner of said stock should assume all risks of injuries which the animals or either of them might receive in consequence of any of them being wild, unruly, vicious, weak, escaping, maiming and killing themselves or each other, or from delays, or in consequence of heat, suffocation, or the ill effects of being crowded upon the cars of said company, or on account of being injured by the burning of hay, straw, or any other material used by the owner in feeding the stock, or otherwise, and any damage occasioned thereby, and also all risk of any loss or damage which might be sustained by reason of any delay, or from any other cause or thing in or incident to, or from, or in, the loading or unloading of said stock; that said owner should load and unload said stock at his own risk, the railroad company

The Indianapolis, Pittsburg, and Cleveland R. R. Company *v.* Allen.

furnishing the necessary laborers to assist, under the direction and control of said owner, who should examine for himself all the means used in loading and unloading, to see that they were of sufficient strength, of the right kind, and in good repair and order; that each person riding free to take care and charge of said stock should do so at his own risk of personal injury from whatever cause; and that the owner should release, and hold harmless, and keep indemnified, the railroad company, from all damages, actions, claims, and suits, on account of any and every injury, loss, and damage heretofore referred to, if any should occur or happen. Suit against the railroad company to recover for certain animals shipped by the plaintiff, under this contract, and lost, while in course of transportation, by escaping through a window open in the end of the car in which they had been loaded by the plaintiff's agent, who accompanied them on the route, and who, after the escape of one of the animals, told the conductor to fix said window, and, the conductor not doing so, fixed it himself.

*Held,* that the railroad company was liable for the loss.

APPEAL from the Marion Civil Circuit Court.

GREGORY, J.—The main question in this case arises on the construction of a contract for freighting stock, made by the parties, under which the appellee shipped six car loads of fat hogs from Indianapolis to Buffalo.

The contract provides, "that whereas said railroad companies transport live stock at only first class rates, as per their tariffs, excepting only in the cases where the owner assumes certain risks and incidents specified below, in consideration of obtaining the transportation at reduced rates; and whereas the said party of the second part, in the present case assumes, and takes upon himself said risks and incidents for said consideration; now, therefore, in consideration that said railroad will transport for the said party live stock at the reduced rate of ——— dollars for single decks and ——— dollars for double decks, per car load, from Indianapolis to Buffalo, and charges advanced, the said party of the second part does hereby agree to take and does hereby assume all and every the risks of injuries which the animals or either of them may receive in consequence of any of them being wild, unruly, vicious, weak, escaping, maiming and killing themselves or each other, or from delays, or in consequence of heat, suffocation, or the ill effects

of being crowded upon the cars of said railroad companies, or on account of being injured by the burning of hay, straw, or any other material used by the owner in feeding the stock, or otherwise, and for any damage occasioned thereby; and also all risk of any loss or damage which may be sustained by reason of any delay, or from any other cause or thing in or incident to, or from, or in, the loading or unloading said stock. And it is further agreed that the said party of the second part is to load and unload said stock at his own risk, the said railroad companies furnishing the necessary laborers to assist, under the direction and control of the said party of the second part, who will examine for himself all the means used in the loading and unloading, to see that they are of sufficient strength, of the right kind, and in good repair and order. And it is further agreed between the parties hereto that each and every of the persons riding free, to take care and charge of said stock, do so at their own risk of personal injury from whatever cause. And the said party of the second part, for the consideration aforesaid, hereby releases, and agrees to release and to hold harmless and keep indemnified, the said party of the first part, of and from all damages, actions, claims, and suits, on account of any and every injuries, loss, and damages heretofore referred to, if any occurs or happens."

The injury compained of is thus charged in the complaint: "that while said hogs were in the care, custody, and possession of appellants, and while in her cars and upon her said railroad, by reason of the insecure and insufficient doors, shutters, slides, and widows of defendant's cars, and the fastenings thereto, and by reason of the want of care and diligence of defendant in safely keeping, securing, carrying, transporting, and shipping said hogs, six of them escaped from said defendant's cars, through the insufficiency of the fastenings of the doors, shutters, slides, and windows aforesaid, and defendant's negligence."

The second paragraph of the answer sets up the special contract, and that the hogs were loaded and transported in

pursuance thereof, under the direction and control of the plaintiff, the company furnishing the cars and necessary laborers. A demurrer was sustained to this paragraph of the answer.

A trial was had under the general denial; finding for the plaintiff; motion for a new trial overruled.

The evidence shows that the hogs were shipped under this contract; that they were loaded by an agent of the plaintiff, who accompanied them to Buffalo; that the six hogs probably escaped through a little window that was open at the end of the upper deck of one of the cars; that after the escape of one of the hogs, the agent of the plaintiff told the conductor to fix the window, but he did not do it, and the agent fixed it himself.

It is claimed that under the contract the appellant is not liable for this loss.

In *Lee* v. *Marsh*, 43 Barb. 102, there was an express stipulation against liability for loss "that may happen from any other cause than the wilful negligence or fraud of said receiver or his agents." In the case at bar there is no such provision. It is true, that the language of the contract is broad enough to cover loss from any cause whatever; but in *The Michigan Southern & Northern Indiana R. R. Co.* v. *Heaton*, at this term, after a careful examination of the subject, this court came to the conclusion, that a contract as broad in its terms as the one under consideration did not cover liability for loss occasioned by ordinary negligence. Indeed, it is held in that case, that a common carrier can not contract against liability for loss from his own ordinary negligence; that such a condition is void as against public policy.*

* Note, by Gregory, J.—A rehearing was granted in *The Michigan Southern & Northern Indiana R. R. Co.* v. *Heaton*, *supra*, at the November term, 1869, not, however, on this ruling. The following is the opinion so far as this question is involved:—

It was with great reluctance that the courts of several of our American states at last yielded their assent to the proposition that the strict and severe responsibility which the common law imposes upon a common carrier could

The railroad company had the exclusive possession and management of the cars in their transit; the shipper was to load and unload, but this did not include the time embraced in operating the train in the course of transportation; during that time, in the very nature of things, the company controlled it. The evidence shows a case of want of ordinary care on the part of the agents of the railroad company. The court committed no error in sustaining the demurrer to the second paragraph of the answer, or in overruling the appellant's motion for a new trial.

Judgment affirmed, with costs.

*J. A. Harrison,* for appellant.

*J. Hanna* and *F. Knefler,* for appellee.

be limited by special contract. *The Camden & Amboy R. R. Co.* v. *Baldauf,* 16 Penn. St. 67; *N. J. Steam Nav. Co.* v. *Merchants' Bank,* 6 How. U. S. 344; *Gould* v. *Hill,* 2 Hill, 623; *Laing* v. *Colder,* 8 Penn. St. 479; *Atwood* v. *Reliance Transp. Co.,* 9 Watts, 87. And this regret will be more deeply felt as the business of transporting goods passes more and more into the hands of extensive corporations, controlling vast capital, and, by combinations with each other, virtually destroying competition. The shipper will not be in a position to contract with them on equal terms—he must submit to oppressive conditions, if they choose to impose them, or fail to procure the carriage of his merchandise to market. But if the general question is not now open, and has been so fully settled by judicial decision that the rule *stare decisis* is absolutely controlling, and a remedy is called for by the great public interests of commerce, it must be sought in legislation. We have, however, not now to do with that question necessarily, and we do not propose to ourselves its decision at present.

The language of the contract in the case before us is capable of a very broad construction. It would do no violence to its words, to say that it was intended to exempt the carrier from liability for loss by fire or accident, though such fire or accident were the result of the grossest carelessness on the part of the carrier. But the appellant concedes that such a construction cannot be sustained, for the reason that gross carelessness, under the circumstances, would be fraud, and a contract whereby a party stipulates for immunity for his own fraud is against public policy and will not therefore be tolerated. But why would gross carelessness be fraud? It is the absence of the slightest care. Why should it be fraud, if the parties have contracted for exemption from all care, and have adjusted the compensation accordingly? Shall the carrier be compelled to exercise some degree of care, though he is to receive no compensation for it, and the property has been put into his warehouse upon an express agreement that he need not trouble himself about it at all?

The Indianapolis, Pittsburg, and Cleveland R. R. Company *v.* Allen.

Must he do more than he has contracted to do, and more than he is paid for doing, to avoid the imputation of fraud? Nay, is fraud ever predicated of a transaction where a contract fairly entered into has been fully and scrupulously performed according to the very intention of both parties to it, and according to its letter? It seems to us that the reason why a carrier may not, because of public policy, stipulate for his own gross carelessness, is a different one, and does not necessarily involve the idea of fraud. The law has a tender care for great public interests, pecuniary as well as moral, and in many cases will hold contracts void because they are plainly in contravention of the public welfare in a mere business aspect. Trade and commerce are objects of this fostering care. Hence a contract never to carry on a particular business, however ample the consideration, is illegal and void. It injuriously affects the public, by depriving it of men's services in departments in which they may be most useful; it discourages industry and enterprise, diminishes the products of ingenuity and skill, prevents competition, enhances prices, and exposes the community to all the evils of monopoly. *Alger* v. *Thacher*, 19 Pick. 51. But there is no element of fraud in it. And there are other classes of contracts, not needful now to be enumerated, also held illegal and void as being against public policy, merely because their performance would tend to affect injuriously important interests of society. Contracts in general restraint of marriage, and marriage brocage contracts may be mentioned as examples. Now, the shipper puts his goods in the custody of the carrier, and thereby excludes himself from all opportunity to care for their safety until the transit is terminated. If the carrier do not guard them against spoliation, damage, or destruction, the goods are subject to multiplied hazards; the perils of transportation become a most serious check to the great interests of commerce; and interchanges of commodities between distant sections are rendered precarious and uncertain. Transportation generally, without any care by the carrier for the safety of the goods, would be a tax upon the industry of the country impossible to be estimated. If adopted and maintained as a rule, in a country of such large extent and diversified production as ours, it would ruinously diminish the home value of such of the fruits of industry as must be sent to distant markets, and greatly enhance it to the ultimate consumer, thus operating to the serious detriment of both. But the consequences to the community need not be further dwelt upon. It may be enough to say, that none of the great corporations engaged in the carriage of goods to market would perhaps be willing to publish to shippers, that it is a fact that they give no care whatever to avoid the loss, by fire or accident, of goods confided to them for shipment. It would injuriously affect the business of any one of them, if believed by shippers. Traffic would seek other channels, if others claimed to bestow reasonable care for the safety of their cargoes; nor would low tariffs be deemed enough to induce the exposure of goods to so many probabilities of destruction. It is not quite true, then, that the contract between the shipper and the carrier concerns only themselves, as has been sometimes assumed; it does affect also great public interests most seriously and vitally, and therein

rests a reason, entirely satisfactory to us, for the conclusion, that the parties are not at liberty to make such a contract as they please.

There is still another reason why, in such a contract, a general exemption of the carrier from the consequences of gross negligence should be held void. Some care on the part of the carrier is absolutely essential to the performance of the contract in any reasonable sense. Property cannot take care of itself; the carrier, during the transit, has exclusive custody and control of it, and he only has the right to give that attention to it without which the chances of its loss and destruction are so imminent that it is not fair to assume that it would have been shipped at all. A condition that no care, or anything less than reasonable care, shall be bestowed upon it, is therefore repugnant to the general intention of the contract, and should be rejected.

Indeed, it was once supposed to be a proposition not liable to be controverted, that a common carrier was, in his relations to society, somewhat different from a private party—that he exercised a sort of public employment, was bound to carry all goods offered for reasonable compensation, and that the law imposed upon him his duties and responsibilities as incident to the character voluntarily assumed. We have seen that the American courts, following those of England, have in many quarters evinced a reluctant tendency wholly to disregard this ancient doctrine. The same disposition in England compelled the timely interposition of Parliament to check it. Here there has been a fortunate hesitancy and doubt, evincing a purpose to refuse to sanction such stipulated exemptions from the carrier's common law liability as would impair the reasonable efficiency of the contract for shipment, and thus defeat its purpose. To dispense with the duty of exercising at least ordinary care for the safety of the goods, would, it is plain, have this effect; and this court, upon the fullest consideration of the subject, finds itself free from all doubt that a condition so repugnant to the general and chief purpose plainly intended by the contract is void, and must be disregarded. The doctrine is elementary and of universal application. The contract for shipment necessarily implies that the carrier shall use some measure of diligence to deliver the goods at the place of their destination. Slight care—the least measure of diligence—is not reasonably sufficient to preserve valuable merchandise from the depredations of thieves, or from destruction by the elements. The plain purpose of the contract of shipment is, to secure the safe transportation and delivery of the goods and it surely is equally plain that a provision in it that the carrier need not make a reasonable effort to accomplish that purpose—such an effort as men of ordinary prudence would make if engaged in transporting their own goods—is destructive of this purpose and intent. And it has accordingly been held, that such a provision, however broad its terms, has only the effect of reducing the liability for negligence of a common carrier to that of a private carrier for hire, who is bound to the use of ordinary care. So the rule was declared by the Supreme Court of the United States, in the *N. J. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. 344, the leading American case sustaining such special contracts. It was only the "extraordinary duties annexed to the employment" which it was there held might be dispensed with

The Indianapolis, Pittsburg, and Cleveland R. R. Company *v.* Allen.

by special contract. The language of the agreement was of the most comprehensive character, expressly declaring that the goods should "be at all times at the exclusive risk" of the shipper, and the carrier "will not in any event be responsible for the loss of any goods." And yet the court held this language: "The owner by entering into the contract virtually agrees that in respect to the particular transaction the carrier is not to be regarded as in the exercise of his public employment, but as a private person who incurs no responsibility beyond that of an ordinary bailee for hire, and answerable only for misconduct or negligence." And again, "We think it would be going further than the intent of the parties, upon any fair and reasonable construction of the agreement, were we to regard it as stipulating for wilful misconduct, gross negligence, or want of ordinary care," &c. And such was stated to be the result of the English cases. The effect of the case is, that general language, however comprehensive, and however plainly it may declare a purpose to exempt the carrier from every possible risk incident to the shipment, shall nevertheless not be understood to include losses resulting from want of his reasonable care. We know not upon what principle such a construction of the contract in that case could be maintained, save that which we have stated above. See also *Lyon* v. *Mells*, 5 East, 428. In *Wyld* v. *Pickford*, 8 M. & W. 442, the contract pleaded provided against the carrier's liability unless the goods were insured according to their value, and paid for at the time of delivery; which had not been done. The question arose upon a demurrer to the plea, and the court, upon a review of the cases, held, that the carrier was liable for ordinary negligence, notwithstanding the contract. The court, per PARKE, B., said: "But still he undertakes to carry from one place to another, and for some reward in respect of the carriage, and is therefore bound to use ordinary care in the custody of the goods." See, also, *Hinton* v. *Dibbin*, 2. Q. B. 646; Story on Bailm. ? 571; *Thomas* v. *Boston & Prov. R. R.*, 10 Met. 472; *Penn. R. R. Co.* v. *McCloskey*, 23 Penn. St. 526; *Powell* v. *Pa. R. R.* 32 *id.* 414; *Welsh* v. *P. F. W. & C. R. R. Co.* 10 Ohio St. 65. Citations might be multiplied; but we choose to rest our decision of the case before us quite as much upon principle as upon the decided cases. The latter are not uniform, and are incapable of reconciliation. It will be seen from the cases cited, that whether the negligence of the carrier be gross or ordinary, does not, in such a case, affect the question of liability.