*ALANSON CAPEHART v. SEABOARD & ROANOKE RAIL-
ROAD COMPANY.

*Common Carrier—Cannot contract against negligence—Limi-
tation of Liability.*

1. A common carrier may, by special contract founded upon valuable
   consideration, or upon notice brought to the knowledge of the owner
   of goods delivered for transportation, relieve himself from liability as an
   insurer, but he cannot so limit his responsibility for loss or damage re-
   sulting from his failure to exercise ordinary care.

2. A contract restricting the responsibility of the carrier must be reason-
   able, and not calculated to ensnare or defraud the other party.

3. A stipulation in a bill of lading that in case any claim for damage
   should arise for the loss of articles mentioned in the receipt, while *in
   transitu* or before delivery, the extent of such damage or loss shall be
   adjusted before removal from the station, and claim therefor made
   in thirty days to a "trace agent" of the carrier, is an unreasonable
   provision which the courts will not uphold.

(*Smith* v. *R. R. Co.*, 64 N. C., 235; *Glenn* v. *R. R. Co.*, 63 N. C., 510,
cited and approved.)

CIVIL ACTION tried at Spring Term, 1879, of NORTHAMP-
TON Superior Court, before *More, J.*

This action was brought to recover damages for sixty-two
bales of cotton, which defendant company as a common
carrier had contracted to carry over its road from Bull Hill
landing in Northampton county to Norfolk, Virginia, upon
the allegation that the damage to the cotton was caused by
the negligence of defendant, or its agents or servants, while
being transported on its road. The defendant denied the
allegation of negligence and that the cotton was in good
order when received, and for a further defence relied for its
exoneration upon a special contract which was appended to

---

*Smith, C. J., having been of counsel, did not sit on the hearing of this
case.

the bill of lading, wherein it was stipulated among other things "that in case any claim should arise from any damage or loss of articles mentioned in this receipt while *in transitu*, or before delivery, the extent of such damage or loss shall be adjusted in the presence of an officer of the line before the same be removed from the station, and such claim must be sent within thirty days after the damage or loss occurred, to James McCarrick, Trace Agent, Portsmouth, Virginia, who has authority to settle such claims."

Issues were sumbitted to the jury, which with the finding upon each are as follows;

1. Was the cotton mentioned in the pleadings in good condition when delivered to defendant? Ans—Yes.

2. Was it damaged while in possession of defendant? Ans—Yes.

3. Was it damaged by defendant's negligence or that of its agents or servants? Ans—Yes.

4. If so, what was the amount of damages? Ans—$1,225 with interest thereon from February 15th, 1873.

5. If the cotton was damaged, was the damage patent and plain? Ans—It was.

6. Was there a special contract for the transportation of said cotton as is alleged in the amended answer? Ans— es.

7. If so, did any consideration pass for said contract? Ans—Yes.

8. Was the damage done to the cotton in whole or in part by the negligence of plaintiff's consignees, K. Biggs & Co., and if so, to what extent? Ans—No.

9. Was the cotton wet and muddy when received by said consignees? Ans—Yes.

10. Was any claim for damages made upon defendant before or at the time the cotton was received by said consignees? Admitted there was not.

Upon the finding of the jury the plaintiff moved to set

aside the verdict and grant him a new trial upon several grounds of alleged error in the rulings and instructions of the court (not necessary to be set out) which motion was overruled; and the plaintiff then moved for judgment on the verdict upon the ground that the special contract set up in the amended answer could only reduce the defendant's liability from that of a common carrier to that of a bailee for hire, which motion was also refused; the plaintiff excepted and judgment was rendered for defendant, from which the plaintiff appealed.

*Messrs. W. W. & R. B. Peebles*, for plaintiff:

Common carriers may by special contract supported by a consideration limit their common law liability so as to relieve themselves from losses occasioned by accidents beyond their control, and not brought about in whole or in part by the negligence of themselves, their agents or servants; but no such contracts can relieve them from losses occasioned by such negligence. *Smith* v. *R. R. Co.*, 64 N. C., 235; *Glenn* v. *R. R. Co.*, 63 N. C., 510; 6 How., 344; 17 Wall., 357; 93 U. S. Rep., 174; 10 Wall., 176; 36 Ga., 532; 44 Ala., 101; *Lee* v. *R. R. Co.*, 72 N. C., 236; Story on Bailments, § 571.

*Messrs. D. A. Barnes, S. J. Wright* and *Gilliam & Gatling*, for defendant:

Cited and commented on *Capehart* v. *R. R. Co.*, 78 N. C., 294; *Bailey* v. *Pool*, 13 Ire., 404; *State* v. *Revels*, Busb., 200.

ASHE, J. The only question presented for our consideration in this case, is, did the court below render the proper judgment upon the finding of the jury? We think it did not, and that the judgment should have been in favor of the plaintiff.

The jury found by their verdict the facts that the cotton when delivered to the defendant was in good order; that

when delivered to the plaintiff's consignee it was wet, muddy and damaged; that it was damaged while in the possession of the defendant by its negligence or that of its agents or servants; that the damage to the cotton was not contributed to in any part by the negligence of the plaintiff; and that the amount of damage to the cotton was twelve hundred and twenty-five dollars.

Upon the finding of these facts the plaintiff was clearly entitled to a verdict for the amount of the damages ascertained by the jury. The defendant was a common carrier and liable for all damages of goods entrusted to it for transportation, during the carriage, from whatsoever cause, except from the act of God or the public enemy. It was an insurer and was liable without any negligence on its part.

But the jury also found that there was a special contract, and the defendant insisted, and so the court held, that as the plaintiff did not comply with the conditions of the contract, it was exonerated from all liability for the damages resulting from its negligence. The right of a common carrier to limit or diminish his general liability by a special contract, has given rise to as much if not more discussion and contrariety of opinion, than any other question of law. Most of the more recent cases held that common carriers may restrict their general liability by notice brought home to the knowledge of the owner of the goods, before or at the time of the delivery to the carrier, if assented to by the owner. 2 Redfield on Railways, 100. And it has been held that the receipt of the bill of lading by the shipper or his agent with restrictive stipulations annexed, is presumptive evidence of assent; though on this, there has been a diversity of opinion, as upon every other branch of this subject; some of the courts going so far as to hold that a bill of lading with the receipt in large letters and the stipulations in small print, is an insufficient notice. However this may be,

it is certainly a mode of giving *notice* that is not to be com-
mended.

The jury have found that there was a special contract,
and the inquiry is, what effect has that upon the general
liability of the defendant as a common carrier? Has the
plaintiff lost his right of action against the defendant by
reason of his having failed to have the extent of the dam-
age adjusted in presence of an officer of the line before the
removal of the cotton, and not presenting his claim for
damages within thirty days as prescribed in the "stipula-
tions"? The leading case on this subject is *New Jersey Nav.
Co.* v. *Merchants' Bank*, 6 How., (U. S.), 344, which Mr. RED-
FIELD in his valuable work on the law of Railways speaks
of, as giving a fair exposition of the American law upon the
subject. In that case, Mr. Justice NELSON said: "The spe-
cial agreement in this case under which the goods were
shipped, provided that they should be conveyed at the risk
of Harnden, and that the respondents were not to be re-
sponsible to him or his employees in any event for loss or
damages. The language is general and broad, and might
very well comprehend every description of risk incident to
the shipping. But we think it would be going further than
the intent of the parties upon any fair and reasonable con-
struction of the agreement, were we to regard it as stipula-
ting for wilful misconduct, gross negligence, or want of or-
dinary care. * * * Although he was allowed to exempt
himself from losses arising out of events and accidents,
against which he was a sort of insurer, yet as he had under-
taken to carry the goods from one place to another, he was
deemed to have incurred the same degree of responsibility,
as that which attaches to a private person engaged casually
in the like occupation, and was therefore bound to use ordi-
nary care in the custody of the goods and their delivery."

To the same effect is the case of *Bank of Kentucky* v. *Ad-
dams Express Co.*, 93 U. S. Rep., 174, which was a case where

the bill of lading had stipulations or conditions attached restricting the liability of the company, among which was one " that the company would not be liable for any such loss, unless the claim therefor should be made in writing at this office within thirty days from the date, in a statement to which this receipt shall be annexed." The court there held that an exception in its bill of lading that the express company is not to be liable in any manner or to any extent for any loss, damage or detention of its contents, or of any portion thereof, occasioned by fire, does not excuse the company from liability for the loss of such package by fire, if caused by the negligence of a railroad company, to which the former had confided a part of the duty it had assumed. Public policy demands that the right of the owner to absolute security against the negligence of the carrier and all persons engaged in performing his duty, shall not be taken away by any reservation in his receipt, or by any arrangement between them and the performing company.

In *Wyld* v. *Pinkford*, 8 M. & W., 443, the court of exchequer decided that the carrier, notwithstanding his notice, was bound to use ordinary care. In *Bodenham* v. *Bennett*, 4 Price 31, followed and approved by *Birkett* v. *Willan*, 2 B. & A., 356, it was decided that notices restricting the liability of a common carrier were only intended to exempt carriers from extraordinary events, and were not meant to exempt from due ordinary care.

We might cite a number of cases in the courts of different states of this country, establishing the principle that a common carrier cannot by special notice or contract exempt himself from the exercise of ordinary care and prudence in the carriage of goods. In addition to those already cited, we refer to the cases of *Camden & Amboy R. R. Co.* v. *Bauldauff*, 16 Penn. St. Rep., 67; *Dorr* v. *Steam Nav. Co.*, 4 Sandf., 136; *Parsons* v. *Monteath*, 13 Barb., 353; *Bingham* v. *Rogers*,

W. & S, 495; *Jones* v. *Voorhees,* 10 Ohio, 145; *School District* v. *R. R. Co.,* 102 Mass., 552; Story on Bailments § 571.

But we are not without authorities in our own state maintaining the same doctrine: This court held in the case of *Smith & Melton* v. *N. C. R. R. Co.,* 64 N. C., 235, "that although a common carrier cannot by a general notice to such effect free itself from all liability for property by it transported, yet by notice brought to the knowledge of the owner it may reasonably qualify its liability as common carrier, and in such case it will remain liable for want of ordinary care, *i. e.,* negligence." And to the same effect is the case of *Glenn* v. *R. R. Co.,* 63 N. C., 510.

From the examination of the authorities on this subject, we conclude that a common carrier cannot by special notice brought home to the knowledge of the owner of goods, much less by general notice, nor by contract even, exonerate himself from the duty to exercise ordinary care and prudence in the transportation of goods; and we deduce from the principles enunciated by them, the following propositions:

1. That a common carrier being an insurer against all losses and damages, except those occurring from the act of God or the public enemy, may by special notice brought to the knowledge of the owner of goods delivered for transportation, or by contract, restrict his liability as an insurer, where there is no negligence on his part.

2. That he cannot by contract even limit his responsibility for loss or damage resulting from his want of the due exercise of ordinary care.

And now that railways have become so numerous, and as carriers have absorbed so much of that class of business which is so important to our increasing commerce and the more frequent intercourse of our people, to hold a different doctrine would lead to the abolition of those safeguards of

life and property, which public policy demands shall be preserved and protected.

The jury having found that there was negligence on the part of defendant, we must take that as a fact, and adhering to the principles established in the cases cited, we are of the opinion that the defendant's liability for damages is not diminished or affected in any way by the notice or contract annexed to the bill of lading, not even by the stipulation that the damages must be adjusted before the removal of the goods from the station and the presentation of the claim for payment within thirty days; for the stipulation must be reasonable; and we do not think it is reasonable to require the consignees of a car load of cotton to cut into the bales before they are received to ascertain whether they have been seriously damaged. "A contract restricting the responsibility of the carrier must be reasonable in itself, and not calculated to ensnare or defraud the other party. A contract requiring notice of losses in thirty days is not reasonable." *Adams Express Co.* v. *Reagan,* 29 Ind., 21; *So. Ex. Co.* v. *Caperton,* 44 Ala. 101; *Place* v. *Union Ex. Eo.,* 2 Hill, 19.

Our conclusion is that the judgment rendered in the court below was not warranted by the finding of the jury. There is error. Judgment must be rendered in this court in behalf of the plaintiff for the amount of damages assessed by the jury.

Error.                    Reversed, and judgment here.