The suit was to recover damages for injuries to a certain horse, owned by plaintiffs and shipped over defendant road in June, 1908, from Roper, N.C. to Norfolk, Va. There was evidence tending to show that the horse, a race horse and valuable animal, was shipped over defendant road at the time stated, and was greatly injured by reason of negligence on the part of the railroad company or its agents having charge of the shipment.
The judge, among other things, charged the jury as follows: "If you find that when the plaintiffs shipped the horse defendant's agent had known that the horse was a race horse, and was valuable, and that he was being shipped for the purpose of racing, and you find that plaintiffs knew nothing about the valuation in the classification, the plaintiffs would be entitled to recover damages sustained on account of the negligence of defendant, which would be the difference in value before and after he was hurt." To this charge the defendants excepted.
And further: "That if the horse was injured while in the possession of the defendants, this fact alone is evidence of negligence. (249) Proof of injury makes it a prima facie case of negligence to carry the case to the jury, and after having heard such evidence as the defendants offered tending to show how the injury occurred, it is for the jury to say whether it was due to the negligence of the defendant or to other causes for which the defendants are not responsible." To this charge the defendant excepted. *Page 240 
The jury rendered the following verdict:
"1. Was the plaintiff's horse injured by the negligence of the Norfolk and Southern Railway Company, as alleged in the complaint? Answer: Yes.
"2. What damage, if any, has the plaintiff sustained by reason of such negligence? Answer: $850."
Judgment on the verdict against the railroad company, and defendant excepted and appealed.
The injury complained of occurred in June, 1908, and in July following defendant company was placed in the hands of receivers in proceedings duly instituted in the Circuit Court of the United States for the Eastern District of North Carolina, and so remained at the time of action instituted and judgment entered; and it is claimed by defendants that no recovery should have been allowed against the company, because it was not named in the summons. The order of the Federal Court vested in the receivers the property and franchise of the Norfolk and Southern Railway Company, and the statute of this State applicable, Revisal, sec. 1224, provides:
"All the real and personal property of an insolvent corporation, wheresoever situated, and all its franchises, rights, privileges and effects shall, upon the appointment of a receiver, forthwith vest in him, and the corporation shall be divested of the title thereto"; and it would seem that under and by virtue of these provisions the receivers were properly named as defendants in the summons.
Without deciding this question, however, an order of the Federal Court, on petition specially presented, permits plaintiff to prosecute to final judgment the said suit against the Norfolk and Southern Railway, Company. The complaint states a cause of action against the company, and on defense duly made, and after full inquiry, the verdict so establishes the validity of plaintiff's claim; and, this being true, we think the failure to formally name the company in the summons is not (250) of the substance, and should be cured now by amendment, even if required.
We have held in several cases that on claims of this character an action against receivers of an insolvent corporation was in effect an action against the company. Grady v. R. R., 116 N.C. 952; Farris v. R. R.,115 N.C. 600.
It was chiefly urged for error on the argument before us that a recovery by plaintiff should be restricted to $100, a maximum valuation on a livestock *Page 241 
contract on file in the company's office at the time the shipment was made, and filed in the record as "Exhibit D." Even if such a restriction appeared in the bill of lading, or as a stipulation in the contract of shipment, we have held at the present term that on the facts relevant to this valuation it would not avail to limit a recovery for an injury due to the negligence of the company. Stringfield v. R. R., ante, 25. But this question as we view it, is in no way presented, for there is no restriction whatever in the bill of lading under which the horse was shipped, nor does it contain any reference to the classification which defendant contends should limit its liability. On the contrary, there was evidence on the part of plaintiff that he was not aware "that there were two or three rates on horses, and that he said nothing about the value of the horse at the time of shipment, and the agent did not ask him about it." And, while the agent, as witness for defendant, testified that at the time of shipment he asked plaintiff what value he was going to place on the horse, and received the reply, "The usual valuation," he further made statement on cross-examination as follows:
"Mr. Roper had never told me he was a race horse and never told me anything of his value, and I knew nothing of his value. I knew he was a race horse, and I had seen him go around the track. I knew he was being sent off for the purpose of racing. At the time Mr. Roper said that he would ship him at the usual classification, I did not tell him what it was. I did not mention a $100 rate on him, nor did he (Roper) say anything about the value of the horse to me."
Thus showing, not only the value was in no way restricted, but that the agent was aware of facts calculated to put a reasonably prudent person on notice that the animal shipped was much above the average in value.
While the position is not presented in the record, nor in the printed briefs, it was further contended for defendant on the oral argument that where it appeared that a horse or other property was shipped and freight paid on a lower valuation to allow a recovery on the basis of a higher valuation would, in effect and by indirection, be giving a preference in freight rates, contrary to the provisions of chapter 3591, (251) sec. 2, Laws of U.S., 1906, 1st Session, Public Laws, U.S., Vol. 34, Part I, pp. 584-587, requiring common carriers to publish a schedule of freight rates and make their charges accordingly; and for plaintiff to insist on such a recovery, after having ascertained the published rates at which his property had been in fact shipped, would make him guilty of a criminal offense, under section 10 of the Interstate Commerce Act, as amended by act of 2 March, 1889, making it a fraud and misdemeanor for a shipper to obtain a preference in freight rates by "knowingly and willfully" making a shipment under "a false billing, *Page 242 
false weighing, false representations of contents of a package, etc., or by any other device or means, whether with or without the consent or cognizance of the carrier, its agents," etc.
Just how a shipper, innocent at the time and entirely ignorant of any classification or difference in rating, who ships a horse and pays the freight charged by the agent, without being informed of the valuation made or without knowing that any special valuation was made, should be held guilty of "knowingly and willfully" committing a fraud and a criminal offense because he institutes an action for recovery for injuries done to the property by the carrier's negligence, and seeks to recover on the basis of its true value, we are utterly unable to perceive. To state the proposition is to answer it, and we would not have referred to it but for the fact that it was earnestly urged before us, and a circular-letter purporting to be from the Interstate Commerce Commission was exhibited which apparently gave it some countenance. See U.S. v. R. R., 43 Fed., 26-30, where Blodgett, J., delivering the opinion, said: "If the agents and employees of a railroad, of whatever rank, make an unlawful contract, or if they knowingly aid and abet in the execution of an unlawful contract which is made an offense under the interstate commerce act, they undoubtedly subject themselves to its penalties; but the proof, as in all criminal cases, must be clear and leave no reasonable ground for doubt as to their guilt and of their knowledge that they were engaged in consummating an illegal act."
Nor we do think the position can be at all sustained, that recovery is forbidden by the statute of 1896, because indirectly giving a preference in rating forbidden by the law. That statute, ch. 3591, Laws 1896, 1st Session, enacted chiefly for the purpose of preventing discrimination in freight rates, and affording further facilities for its discovery, among other things, in section 2, requires common carriers, subject to its provisions, to file and publish a schedule of freight rates, and (252) forbids that any contract shall be entered into between a shipper and carrier containing an agreement for a freight charge lower than the published rates while the same are in force. In several decisions of the Supreme Court of the United States, construing this section and another not dissimilar, in acts of 2 March, 1889, ch. 382-25, Statutes U.S., 855, it has been held that, notwithstanding a contract between the shipper and carrier contained an agreement for a less sum than that of the published rates, the carrier had a right to demand and collect according to the published rate, and to withhold the goods till such amount was paid, and this though the shipper may not have known that the agreement was for a less rate than that allowed by law. R. R. v.Mugg, 202 U.S. 242; R. R. v. Heffler, 158 U.S. 98.
In R. R. v. Mugg, supra, the questions decided are thus stated by the reporter: *Page 243 
"1. One obtaining from a common carrier transportation of goods from one State to another at a rate specified in the bill of lading, less than the schedule rate published and approved and in force at the time, whether he does or does not know the rate is less than schedule rate, is not entitled to recover the goods, or damages for their detention, upon tendering less than the published charges.
"2. Whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the interstate commerce law, the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee become entitled to the goods, only by payment or tender of such amount."
It would seem from this and other similar cases, not that the contract of carriage was held void, but that the forbidden rate was set aside; and it may be that the carrier under the principle indicated might have demanded payment of a greater amount of freight, but there is nothing in these decisions, as we understand them, nor is there any recognized principle which would sustain the position that where there had been noagreement for a lesser rate, and when it appeared that the shipper had not knowingly obtained or received any advantage in the contract of shipment, that such shipper or the party aggrieved could not recover damages for negligent injury to his property on the part of the carrier.
It is the settled policy of this State that common carriers may not contract against loss or damage occasioned by their negligence; and it has been held by the Supreme Court of the United States that, unless and until there is some valid regulation by Congress or the Interstate Commerce Commission directly affecting the matter, a (253) State has the right to establish such a policy and enforce it in refernce [reference] to interstate shipments. R. R. v. Hughes,191 U.S. 477. And, on the facts of this case, we are of opinion that thus far no such interfering stipulation has been shown, and the plaintiff's recovery must be sustained. Latta v. R. R., 172 Fed., 850.
The charge of his Honor as to the burden of proof, excepted to by defendant, is in accord with several decisions of this Court on that subject. Harper v. Express Co., 144 N.C. 639; Meredith v. R. R.,137 N.C. 479; Mitchell v. R. R., 124 N.C. 236.
We find no reversible error in the record, and the judgment is therefore affirmed.
No error.
BROWN, J., concurs in result.
Cited: Hollowell v. R. R., 153 N.C. 21; Harden v. R. R., 157 N.C. 247;Mule Co. v. R. R., 160 N.C. 224; Horse Exchange v. R. R., 171 N.C. 72. *Page 244